**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

George Allicon

        v.                                Civil No. 11-cv-007-SM

Verizon Wireless et al.[1]

**REPORT AND RECOMMENDATION**

        Before the court is George Allicon's complaint (doc. no.
1), and exhibits thereto,[2] asserting violations of the Fair
Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), arising
out of defendants' cancellation of his cell phone service in
2006, and the billing problems that arose subsequent to that
cancellation.  Because Allicon is proceeding pro se and in forma
pauperis, the matter is before me for preliminary review to
determine among other things, whether the complaint states any

---

        [1]In addition to Verizon Wireless (also referred to as
Verizon Cellular by plaintiff), the only defendant listed in the
caption of his complaint, plaintiff has submitted summons forms
for defendants Fairpoint Communications and Trans Union as well.
The court will construe this action to name all three entities
as defendants.

        [2]The contents of documents attached to the complaint may be
considered by the court in determining if plaintiff has stated a
claim upon which relief can be granted.  See Young v. Lepone,
305 F.3d 1, 11 (1st Cir. 2002) (fate of motion to dismiss
generally depends on allegations contained within four corners
of complaint, but may be expanded to include undisputed
information contained within exhibits attached to or referenced
in complaint).  Here, the exhibits attached to the complaint
will be construed as part of the complaint for all purposes in
this case.  See Fed. R. Civ. P. 10(c).

claim upon which relief might be granted.  See 28 U.S.C.
§ 1915(e)(2); United States District Court for the District of
New Hampshire Local Rule ("LR") 4.3(d)(1)(B).

## Standard of Review

Under this court's local rules, when a plaintiff commences
an action pro se and in forma pauperis, the magistrate judge
conducts a preliminary review.  LR 4.3(d)(1).  Pro se pleadings
are construed liberally, to avoid inappropriately stringent
rules and unnecessary dismissals.  See Erickson v. Pardus, 551
U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble,
429 U.S. 97, 106 (1976), to construe pleadings liberally in
favor of pro se party); Castro v. United States, 540 U.S. 375,
381 (2003).  The magistrate judge may issue a report and
recommendation after the initial review, recommending that
claims be dismissed if the court lacks subject matter
jurisdiction, the defendant is immune from the relief sought,
the complaint fails to state a claim upon which relief may be
granted, the allegation of poverty is untrue, or the action is
frivolous or malicious.  See LR 4.3(d)(1) (citing 28 U.S.C.
§ 1915(e)(2) & Fed. R. Civ. P. 12(b)(1)).

To determine if the complaint states any claim upon which
relief could be granted, the court applies a standard analogous
to that used in reviewing a motion to dismiss filed under Fed.

R. Civ. P. 12(b)(6).  The court decides whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  See Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged approach.  See Ocasio-Hernández v. Fortuño-Burset, No. 09-2207, 2011 WL 1228768, *9 (1st Cir. Apr. 1, 2011).  The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action."  Id. (citations, internal quotation marks and alterations omitted).  A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed.  Ocasio-Hernández, 2011 WL 1228768 at *9.  The second part of the test requires the court to credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, to determine if the claim is plausible.  Id.  The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).  The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Bell Atl. Corp., 550

3

U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft, ___ U.S. at ___, 129 S. Ct. at 1950 (citation omitted). In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." Ocasio-Hernández, 2011 WL 1228768 at *9. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id.

### Background

The complaint in this case is disorganized, muddled, and peppered with words and phrases that render certain portions of the complaint essentially incomprehensible. That said, the court has carefully reviewed and generously construed the complaint and finds that Allicon appears to have asserted the following facts.

In the fall of 2006, Allicon became dissatisfied with his particular combination of home and cellular telephone service, each provided by separate Verizon companies. Allicon cancelled his cellular phone service that had been provided by Verizon Wireless. Allicon subsequently received a cell phone bill, sent in December 2006, for the billing period ending December 7, 2006. Doc. 1-1 p. 1. That bill included an "early termination fee" ("ETF"). Id. Allicon states that his cell phone account balance, including the ETF, was paid in full as of November 7, 2006. Doc. 1-1 p. 4. Accordingly, Allicon states that he did not owe any money on his cell phone bill in December 2006 despite receiving a bill indicating otherwise.

On January 7, 2007, Verizon Wireless again billed Allicon for his closed and fully paid cell phone account for the already-paid ETF. Doc. 1-1 p. 2. Allicon states that he ultimately paid the ETF twice.

Allicon has submitted information with his complaint regarding a class-action lawsuit, in which he made a claim as a member of the plaintiff class, regarding Verizon's improper assessment of ETFs. A settlement was reached in that matter and Allicon received a settlement check in the amount of $72.82 on November 18, 2010. Doc. 1-1 p. 12. The amount of that settlement check indicates that Allicon paid the ETF for his wireless account, as class members who did not pay an ETF, but

were damaged by the assessment of an improper ETF, received no more than $25 under the terms of the settlement agreement.[3]

On May 27, 2007, Allicon received a bill from Verizon for his home phone service for a past due balance.  Doc. 1-1 p. 7. Allicon states that the past due balance included an ETF charge that pertained to the cancellation of his cell phone service, and that he had already paid to Verizon Wireless.  Allicon provides no documentation for the assertion that the ETF charge migrated to his home phone bill other than his own handwritten notes on the May 27, 2007, bill attached to the complaint.  Id. Allicon alleges that he received inaccurate bills for his home phone service until July 2010, when FairPoint Communications ("Fairpoint") took over his home phone service.

Believing that the incorrect bills and the appearance of an errant charge on his home phone bill were issues for the New

---

[3]Included in documents submitted by Allicon, there is a URL for an informational website about the class-action settlement: www.verizonetfsettlement.com.  Doc. 1-1 pp. 11-12.  In the class action, the court approved a settlement plan under which class members who proved that they had paid an ETF received a prorated refund of that ETF.  Class members who claimed to have paid an ETF but could not prove the claim, and class members who did not pay the ETF but were harmed by the assessment of the ETF, would each receive $25.00.  See In re Cellphone Fee Termination Cases, 186 Cal.App.4th 1380, 1385, 113 Cal.Rptr.3d 510, 514 (2010) (setting out approved terms of settlement).  Accordingly, Allicon's receipt of a settlement amount in excess of $25.00 corroborates his assertion that he paid an ETF, and that the appearance of the unpaid ETF charge on his credit report was inaccurate.

Hampshire Public Utilities Commission ("PUC"), Allicon filed a complaint with that agency.[4]  Doc. 1-1 p. 6.  Allicon's complaint was referred to a PUC employee, Jan Quint, for investigation on January 28, 2008.  Id.  Ultimately, Allicon was informed that the PUC was not the appropriate agency to investigate his claims, as the PUC does not regulate wireless or cellular phone service providers.

On January 28, 2008, Allicon penned a letter to Quint which is difficult to follow, at best.  Doc. 1-1 pp. 8-10.  In that letter Allicon claims discrepancies in his Verizon home phone and Verizon Wireless bills between November 2006 and May 2007.  Id.  Allicon appears to conclude that an arithmetic error on the part of one of the phone companies is responsible for the discrepancy, in that a payment he made was added to his account balance rather than subtracted from that balance.  Id.  Allicon also concludes that money paid to one of the phone accounts was inadvertently credited to the other account, resulting in the appearance of a balance due when, in fact, none was due.  Id.

Allicon states that at some point, he went to his bank in Milford, New Hampshire, to borrow money for his business, against anticipated business proceeds, as was his practice.

---

[4]Allicon uses the term "unregulated" to describe the alleged ETF charge that appeared on his "regulated" home phone bill. Allicon does not make clear the system of regulation to which he is referring.

Allicon was either denied a loan or was granted a smaller loan than he applied for, requiring him to sell off a truck and trailer in order to obtain the cash necessary to run his business.  Allicon states that the bank denied him credit due to an entry on his credit report from Trans Union, a credit reporting agency.  That entry apparently indicated that Allicon had an unpaid account balance with Verizon Wireless.

Allicon disputed the entry on his credit report with Trans Union and advised Trans Union of the Verizon ETF Settlement.  On March 20, 2009, Allicon received written "Investigation Results" from Trans Union stating that the entry on his credit report had been verified, and no change to his credit report would be entered.  Doc. 1-1 p. 13.

## The Claims[5]

Allicon now claims that defendants have caused him damages by violating their obligations under the FCRA.  Allicon specifically alleges that defendants Verizon Wireless and Trans Union violated the requirements of the FCRA when, after receiving proper notice of Allicon's dispute regarding the accuracy of credit information reported to Trans Union by

---

[5]The claims, as identified herein, will be considered to be the claims in the complaint for all purposes.  If Allicon disagrees with the claims as identified, he must do so by properly objecting to this Report and Recommendation or by properly moving to amend his complaint.

Verizon, neither defendant: (a) conducted a reasonable
investigation of the dispute, or (b) removed or changed the
inaccurate information in Allicon's credit report.[6]

## Discussion

I.   FCRA Generally

The FCRA was enacted "to ensure fair and accurate credit
reporting, promote efficiency in the banking system, and protect
consumer privacy."  Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47,
52 (2007); see also DeAndrade v. Trans Union LLC, 523 F.3d 61,
67 (1st Cir. 2008) ("The FCRA is intended to protect consumers
against the compilation and dissemination of inaccurate credit
information" (emphasis omitted)).  To accomplish this, the FCRA
establishes obligations for those entities that use, furnish, or
manage consumer credit information.  See Chiang v. Verizon New
England Inc., 595 F.3d 26, 35-36 (1st Cir. 2010).  A "consumer,"
for purposes of the FCRA, is an individual to whom credit
information pertains.  See 15 U.S.C. § 1681a(c).  Under the
FCRA, a "consumer reporting agency that compiles and maintains
files on consumers on a nationwide basis" is an agency:

> that regularly engages in the practice of assembling
> or evaluating, and maintaining, for the purpose of
> furnishing consumer reports to third parties bearing
> on a consumer's credit worthiness, credit standing, or

---

[6]As discussed in this Report and Recommendation, Allicon has
named a third defendant, Fairpoint Communications, but has not
clearly asserted any claim against that defendant.

> credit capacity . . . public record information [and]
> [c]redit account information from persons who furnish
> that information regularly and in the ordinary course
> of business.

15 U.S.C. § 1681a(p).  Such agencies are also known as credit

reporting agencies ("CRAs").  CRAs may, under certain prescribed

circumstances, provide credit reports about consumers in

response to inquiries.  See 15 U.S.C. § 1681b.  "Credit reports"

are:

> any written, oral, or other communication of any
> information by a consumer reporting agency bearing on
> a consumer's credit worthiness, credit standing,
> credit capacity, character, general reputation,
> personal characteristics, or mode of living which is
> used or expected to be used or collected in whole or
> in part for the purpose of serving as a factor in
> establishing the consumer's eligibility for (A) credit
> or insurance to be used primarily for personal,
> family, or household purposes; (B) employment
> purposes; or (C) any other purpose authorized under
> section 1681b of [the FCRA].

15 U.S.C. § 1681a(d).  When preparing a credit report, CRAs must

"follow reasonable procedures to assure maximum possible

accuracy of the information concerning the individual about whom

the report relates."  15 U.S.C. § 1681e(b).

In the event that an individual disputes the accuracy of

any information in his or her credit report as prepared by a

CRA, and notifies the CRA of the dispute, the CRA is required to

conduct a "reinvestigation" to determine the accuracy of the

disputed information.  See 15 U.S.C. § 1681i(a)(1)(A).

Generally, that reinvestigation must be completed within thirty

10

days of the date that the CRA was notified of the dispute,

although that period can be briefly extended under certain

circumstances.  See 28 U.S.C. 1681i(a)(1)(B) and (C).  In

addition to conducting the reinvestigation, CRAs are obligated,

within five days of being notified of a consumer's dispute, to

notify the furnisher of the disputed information ("furnisher")

and to provide the furnisher all of the information received

from the consumer relevant to the dispute.  15 U.S.C.

§ 1681i(a)(2)(A).

Once a furnisher is notified of a dispute as to the

accuracy of credit information it provided to the CRA, the

furnisher must:

> (A) conduct an investigation with respect to the
> disputed information; (B) review all relevant
> information provided by the consumer reporting agency;
> (C) report the results of the investigation to the
> consumer reporting agency; (D) if the investigation
> finds that the information is incomplete or
> inaccurate, report those results to all other consumer
> reporting agencies to which the person furnished the
> information and that compile and maintain files on
> consumers on a nationwide basis; and (E) if an item of
> information disputed by a consumer is found to be
> inaccurate or incomplete or cannot be verified after
> any reinvestigation, for purposes of reporting to a
> consumer reporting agency only, as appropriate, based
> on the results of the reinvestigation promptly (i)
> modify that item of information; (ii) delete that item
> of information; or (iii) permanently block the
> reporting of that item of information.

Chiang, 595 F.3d at 36 (internal punctuation omitted) (citing 15

U.S.C. § 1681s-2(b)(1)).  Courts have interpreted the FCRA to

11

require a furnisher's investigation of a dispute as to the accuracy of credit information to be "reasonable."  See Chiang, 595 F.3d at 37.

The FCRA creates a private cause of action that enables consumers to sue both CRAs and furnishers for wilful, intentional, or negligent non-compliance with the requirements of the statute.  See id. at 34-36.  While furnishers are prohibited by the FRCA from providing inaccurate information to a CRA, see 15 U.S.C. § 1681s-2; Chiang, 595 F.3d at 35, the reporting of inaccurate information alone does not give rise to civil liability in a private action.  See Chiang, 595 F.3d at 36 (citing 15 U.S.C. § 1681s-2(c)(1)).  If a furnisher fails to comply with its statutory obligation to investigate disputes and to correct any inaccuracies found as a result of that investigation, the furnisher may then be subject to private suit by a consumer.  See id. at 36.

II.  FCRA Claims

A.  Verizon Wireless

To prevail on a claim against a furnisher, a consumer must prove that the furnisher provided inaccurate information to the CRA.  See id. at 37-38.  Further, a consumer must demonstrate that the CRA notified the furnisher about the dispute.  See id. at 37; Catanzaro v. Experian Info. Solutions, Inc., 671 F. Supp.

2d 256, 259-60 (D. Mass. 2009) (citing Islam v. Option One
Mortg. Corp., 432 F. Supp. 2d 181, 191 (D. Mass. 2006)).  A
consumer's direct notification to the furnisher of an inaccuracy
in the credit report does not trigger the furnisher's liability
in a private action under the FCRA for a failure to reasonably
investigate the dispute.  See Chiang, 595 F.3d at 35.  To
prevail in a suit brought pursuant to the FCRA, the consumer
must prove that the furnisher, once notified of a dispute by the
CRA, failed to conduct a reasonable investigation into the
accuracy of the disputed information, in light of the
information provided to it by the CRA.  See id. at 38.

Accordingly, to state a claim against furnisher Verizon
Wireless, Allicon must assert sufficient facts to allow the
court to find it plausible: (1) that the relevant entry on
Allicon's credit report was inaccurate; (2) that Allicon's
dispute of the entry was reported to the CRA; (3) that the CRA
reported the dispute to Verizon Wireless; (4) that Verizon
Wireless failed to investigate and correct the inaccuracy; and
(5) that Verizon Wireless's failure to investigate and correct
the inaccuracy caused Allicon to suffer a detriment.  See id.;
see also Ashcroft, 129 S. Ct. at 1949.

Allicon asserts that Verizon Wireless reported to Trans
Union that Allicon had an unpaid balance on his wireless
account.  Allicon claims that the balance was paid in full in a

13

timely fashion.  Allicon states that Verizon Wireless reported the inaccurate debt to Trans Union and that Trans Union included that information on Allicon's credit report.  Allicon was then denied credit when he applied for a business loan.  Upon learning of the incorrect entry on his credit report, Allicon reported his dispute, with supporting documentation and information, to Trans Union.  Included in the information provided to Trans Union was information regarding the Verizon Wireless ETF settlement.

While nothing in the complaint specifically demonstrates that Trans Union notified Verizon Wireless of the dispute, Trans Union is required to provide such information to a furnisher under 15 U.S.C. § 1681i(a)(2)(B), and the court will presume for purposes of conducting preliminary review in this matter that Trans Union complied with that statutory obligation.  Trans Union was also required to provide Verizon Wireless with all of the additional relevant information provided to Trans Union by Allicon.  See 15 U.S.C. § 1681i(a)(2).  If Verizon Wireless conducted a reasonably thorough investigation, including a review of the settlement information, it appears that Verizon Wireless would have been alerted to the settlement agreement, and that the amount of money paid to Allicon in settlement tended to show that Allicon had in fact paid his ETF.  Allicon has set forth facts that plausibly assert that a reasonable

14

investigation by Verizon Wireless would have revealed that the
unpaid balance reported to Trans Union by Verizon Wireless and
appearing on Allicon's credit report had actually been paid and
was, in fact, inaccurate.[7]  Accordingly, the court finds that
Allicon has stated sufficient facts to assert a cause of action
against Verizon Wireless for failing to comply with the FCRA's
requirements to conduct a reasonable investigation of Allicon's
dispute, and to correct the inaccuracy in Allicon's credit
report.  In an Order issued simultaneously with this Report and
Recommendation, the court will direct service of this claim on
Verizon Wireless.

    B.   <u>Trans Union</u>

If a consumer reports an inaccuracy in his credit report to
a CRA, the CRA is required "to conduct a reasonable
reinvestigation to determine whether the disputed information is
inaccurate."  <u>DeAndrade</u>, 523 F.3d at 65 (citing 15 U.S.C.

---

[7]The court considers information about the class action
lawsuit here only to determine whether Allicon has stated
sufficient facts to state a claim that the disputed entry on his
credit report was inaccurate.  While the issue in the class
action suit was the appropriateness of levying ETFs on Verizon
wireless customers, whether the ETF in this case was
appropriately levied is not a question presently before the
court in this FCRA action.  <u>See</u> <u>Chiang</u>, 595 F.3d at 38 ("[A]
plaintiff's required showing is *factual* inaccuracy, rather than
the existence of disputed legal questions. . . . [F]urnishers
are neither qualified nor obligated to resolve matters that turn
on questions that can only be resolved by a court of law."
(emphasis in original) (internal quotations and citation
omitted)).

§ 1681i(a)).  To prevail on an FCRA claim against a CRA, Allicon
must demonstrate both that the information from Verizon Wireless
on his credit report was actually inaccurate, and that Trans
Union failed to conduct a reasonable reinvestigation of that
inaccuracy.  As stated above, Allicon has asserted sufficient
facts, at this stage of the proceedings, to state a claim that
the appearance of an unpaid balance on Allicon's Verizon
Wireless account on his credit report was inaccurate.

Allican has also alleged sufficient facts to state a claim
that Trans Union failed to conduct a reasonable reinvestigation
of that inaccuracy and thus violated its duty to prepare an
accurate credit report for Allicon.  Trans Union had information
from plaintiff which, if investigated, could plausibly cast
doubt on the accuracy of the disputed entry on Allicon's credit
report.  See DeAndrade, 523 F.3d at 66.  Accordingly, Allicon
has stated sufficient facts to assert a claim against Trans
Union for a violation of the FCRA.  In an order issued
simultaneously with this Report and Recommendation, the court
will direct service of this claim on Trans Union.

C.   Fairpoint Communications

Allicon alleges that Verizon companies improperly handled
his home phone and wireless accounts, resulting in one or more
overcharges, and that Verizon companies improperly billed him

16

for a balance he had already paid.  It is not at all clear what legal responsibility Fairpoint is alleged to have breached, or what claim Allicon seeks to raise against Fairpoint.  Allicon states in his complaint that Verizon was responsible for the billing errors, and that the improper billing occurred in December 2006.  Allicon states that the challenged billing practices of the Verizon companies continued until July 2010, when Fairpoint took over his Verizon home phone account.  The complaint does not assert or allude to any theory of liability for bringing suit against Fairpoint in 2011 for an account Fairpoint has held only since July 2010, for actions committed by Verizon prior to July 2010.  Simply stated, Allicon has alleged no wrongdoing by Fairpoint, and fails to allege any facts indicating that Fairpoint bears legal responsibility for any of Verizon's alleged wrongdoing.  Accordingly, the court recommends that Fairpoint be dismissed from this action.

## Conclusion

For the foregoing reasons, the court recommends dismissal of defendant Fairpoint Communications from this action.  In an order issued simultaneously with this Report and Recommendation, the court will direct service of the FCRA claims identified above against Verizon Wireless and Trans Union.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008).

_____
Landya B. McCafferty
United States Magistrate Judge

Date: June 9, 2011

cc:  George Allicon, pro se

LBM:jba