```
            UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF NEW HAMPSHIRE
```

George Allicon

    v.                                    Civil No. 11-cv-007-SM

Verizon Wireless


## REPORT AND RECOMMENDATION

Before the court is plaintiff George Allicon's motion for default judgment and request for damages (doc. no. 24). The motion has been referred to this magistrate judge for consideration and a recommendation as to disposition. For the reasons set forth herein, the court recommends that default judgment be granted, and that damages be awarded to plaintiff in the amount of $1,000.00.

I.  Procedural History

Plaintiff filed a complaint (doc. no. 1) alleging that he had been damaged by defendant Verizon Wireless' violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").[1]

---

[1] In addition to Verizon Wireless, Allicon initially named TransUnion, LLC, and Fairpoint Communications as defendants to this action. The district judge approved the magistrate judge's recommendation (doc. no. 8) to dismiss Fairpoint Communications on June 30, 2011 (doc. no. 16). On that date, the district judge also granted Allicon's motion (doc. no. 15) to voluntarily dismiss TransUnion, LLC from this action.

The FCRA, among other things, provides consumers with a private right of action against an entity that has furnished inaccurate information about the consumer's credit history to a credit reporting agency ("CRA") and then fails, upon learning from the CRA that the credit information has been disputed, to reasonably investigate the dispute, or fails to correct the inaccurate information.  See 15 U.S.C. §§ 1681n, 1681o and 1681s-2(b).

The court, after conducting a preliminary review in this matter, found that plaintiff had stated an FCRA claim upon which relief might be granted against Verizon Wireless.  In an order issued June 9, 2011 (doc. no. 9), the court directed the United States Marshal for the District of New Hampshire ("the U.S. Marshal's office") to effect service upon Verizon Wireless.  On July 5, 2011, an executed return of service was filed, indicating that the U.S. Marshal's office made service of this action on Katie Phipps in Verizon Wireless' Human Resources Department on June 24, 2011 (doc. no. 17).

Verizon Wireless did not file a response to the complaint or otherwise appear in this action to defend against Allicon's claims.  Accordingly, on August 3, 2011, the Clerk of Court entered a default as to Verizon Wireless, and directed plaintiff to file a motion for default judgment and an affidavit specifying damages (doc. no. 22).  Plaintiff filed the instant

motion for default judgment (doc. no. 24) on August 17, 2011. A hearing on damages was held before this magistrate judge on September 27, 2011. Plaintiff submitted additional information concerning his request for damages on October 3, 2011 (doc. no. 26).

## II. Default Judgment

### A. Factual Background

The well-pleaded facts in the complaint are deemed admitted by the entry of default against Verizon Wireless. See Joe Hand Promotions, Inc. v. Patton, No. 10-40242-FDS, 2011 WL 6002475, *1 n.1 (D. Mass. Nov. 29, 2011) (quoting Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62-63 (1st Cir. 2002) (other citations omitted) (defendants defaulting or otherwise failing to plead are "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which the damages will be calculated")). Accordingly, the following facts, asserted in Allicon's pleadings, are deemed admitted and are thus taken as true.

George Allicon cancelled his Verizon Wireless cellular phone service in the fall of 2006 and paid the final balance of $138.81 on that account on November 7, 2006. Several months later, the $138.81 charge appeared on Allicon's Verizon home

phone bill.  Allicon made repeated requests to have the billing mistake corrected.  Verizon Wireless, however, ultimately reported to at least two CRAs, TransUnion, LLC, and Experian, that Allicon had a delinquent account with Verizon Wireless consisting of the $138.81 balance that Allicon had already paid, and finance charges on that allegedly unpaid balance.

Allicon, at the time the events giving rise to this suit occurred, was the sole proprietor of a trucking company.  Allicon was in the habit of obtaining a line of credit at the bank at the beginning of each year in order to run his business, as he needed cash early in the year to obtain "up front permits."  Allicon applied for a $15,000.00 line of credit in 2008 from TD Banknorth, N.A.

On January 25, 2008, the bank denied Allicon's credit request due to the presence on Allicon's credit report of a delinquent account with Verizon Wireless.  The bank approved Allicon for only a $2,000.00 loan.  Allicon utilized that $2,000.00 to pay living expenses and minimum balances on his credit cards.  In 2008, as a result of being denied credit, Allicon had to sell a tractor-trailer combination worth approximately $16,000.00 for the salvage price of $4,000.00.  Also, because Allicon was unable to pay more than the minimum balance on his credit cards for three consecutive months, his

4

interest rate tripled, to 66%, and he eventually defaulted on those payments. Allicon has not asserted additional damages occurring after the 2008 sale of his truck, aside from the continuing accrual of interest and fees on his previously defaulted credit cards.

Allicon filed a dispute with TransUnion regarding the reported Verizon Wireless delinquency. The record does not reflect whether Allicon disputed the same charge with Experian.[2] Allicon initiated a dispute with TransUnion, challenging the accuracy of the Verizon Wireless delinquency on his credit report, on or after January 30, 2009, more than a year after TD Banknorth denied him credit.[3] In Allicon's dispute, he alerted

---

[2] The FCRA requires that a furnisher who corrects an inaccuracy in response to a dispute filed under the FCRA report the correction to all of the CRAs to which it reported the inaccuracy. See 15 U.S.C. § 1681s-2(b)(1)(D). Accordingly, Allicon's report of a dispute with TransUnion would, if successful, serve to remove the adverse credit entry from Experian or any other CRA to which Verizon reported Allicon's information.

[3] Allicon has not provided the court with the precise date he filed his dispute with TransUnion. The FCRA allows a maximum of fifty days between the initiation of the complaint by a consumer with a credit reporting agency, and the date that the credit reporting agency is required to have completed its "reinvestigation" and advised the consumer of the results. See 15 U.S.C. § 1681i(a)(1)(A); § 1681i(a)(1)(B); § 1681i(a)(6)(A). Accordingly, the court can surmise that the earliest date upon which Allicon could have initiated his dispute was January 30, 2009, fifty days prior to the March 20, 2009, notice from TransUnion advising Allicon of the results of the reinvestigation of his dispute.

TransUnion that Verizon's own records would reflect timely payment in full of the $138.81 charge, and that the delinquency entry was thus inaccurate. On March 20, 2009, TransUnion notified Allicon that his dispute had been investigated, that the delinquency report from Verizon Wireless was "verified," and that no change would be made to his credit report.

    B.   <u>FCRA Claim</u>

The FCRA places obligations on entities that use, furnish, or manage consumer credit information to record and report that information in a manner designed "to protect consumers against the compilation and dissemination of inaccurate credit information." <u>DeAndrade v. Trans Union LLC</u>, 523 F.3d 61, 67 (1st Cir. 2008); <u>see</u> <u>Chiang v. Verizon New England Inc.</u>, 595 F.3d 26, 35-36 (1st Cir. 2010). Once an entity that has furnished challenged credit information to a CRA has been notified by the CRA that the consumer has disputed the information, the "furnisher" is obliged to promptly conduct a reasonable investigation of the dispute and report any errors discovered to the reporting CRA and to any other CRAs to whom the furnisher supplied the inaccurate information. <u>See</u> 15 U.S.C. § 1681s-2(b)(1) and (2); <u>Chiang</u>, 595 F.3d at 37 (requiring furnisher's investigation of a dispute as to the accuracy of credit information to be "reasonable").

Presuming TransUnion met its statutory obligation to provide Verizon Wireless with the information Allicon had supplied relative to the dispute, the court finds that Verizon Wireless failed to reasonably investigate the disputed credit information.  Allicon provided documentation to TransUnion supporting his dispute, and referred TransUnion to Verizon Wireless' own records.  The court finds that any reasonable investigation conducted by Verizon Wireless would have entailed a review of Verizon Wireless' own records, as well as the information supplied to TransUnion by Allicon, all of which plainly demonstrated that the reported delinquency on Allicon's credit report was inaccurate.  Verizon Wireless, although it had sufficient information to identify the inaccuracy, failed to reasonably investigate and/or correct the inaccurate adverse credit report.  See Thomas v. U.S. Bank, N.A., No. CV 05-1725-MO, 2007 WL 764312, *4 (D. Or. Mar. 8, 2007) (where bank advised by CRA of dispute cursorily verified inaccurate entry on consumer's credit report without reviewing its own records, plaintiff could maintain claim for unreasonable investigation).  The court further finds that these facts, taken as true and admitted, are sufficient to demonstrate that Verizon Wireless acted willfully in failing to reasonably investigate and correct the inaccurate information.  Allicon has asserted a viable claim

7

for relief supported by well-pleaded facts, which are deemed admitted. The court therefore recommends that a default judgment enter against Verizon Wireless in this matter.

III. Damages

Where a default judgment is entered, plaintiff is obliged to prove damages against the defendant. See Fed. R. Civ. P. 55(b)(2); Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 339 n.3 (1st Cir. 2008); KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." (citations omitted)). FCRA allows recovery against a defendant who has committed a willful violation of FCRA for either actual or statutory damages.[4] See 15 U.S.C. § 1681n. As discussed above, the facts in this case support a finding that Verizon Wireless acted willfully in failing to conduct a reasonable

---

[4] Plaintiffs may recover damages for emotional distress and punitive damages under the FCRA. While Allicon has reported "hours of consternation" in his efforts to have his records corrected, he has not alleged or proved any mental or emotional distress or injury resulting from such consternation. Accordingly, the court finds that no award of damages for emotional distress is proper. Allicon did not seek punitive damages, and the court finds no reason, on the current record, to award punitive damages.

investigation and correct the inaccuracy in plaintiff's credit report. See 15 U.S.C. § 1681s-2(b)(1)(A)-(E).

A. Actual Damages

Verizon Wireless's liability arises out of its failure to reasonably investigate and/or correct inaccuracies in Allicon's credit report in response to Allicon's dispute with TransUnion of the reported credit information; liability does not arise under the FCRA from Verizon Wireless' reporting of inaccurate information to a CRA prior to being notified by the CRA of Allicon's dispute. See Barrepski v. Capital One Bank, 439 F. App'x 11, 12 (1st Cir. 2011) (furnisher must receive notice of dispute from credit reporting agency before it is obliged to act under FCRA; notice of dispute received directly from consumer does not trigger furnisher's duty to investigate under FCRA); Thomas, 2007 WL 764312 at *3 (same); see also 15 U.S.C. § 1681s-2(b). Verizon Wireless' liability did not arise therefore until March 2009 when the reinvestigation, conducted pursuant to Alicon's dispute, was completed. Allicon cannot establish a causal link between Verizon Wireless' 2009 violation of the FCRA and the January 2008 denial of credit that was the cause of his reported injuries that occurred more than a year earlier. See Sarver v. Experian Info. Solutions, 390 F.3d 969, 971 (7th Cir. 2004) ("[w]ithout a causal relation between the violation of the

statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages'" (citation omitted)); see also Thomas, 2007 WL 764312 at *6 (accuracy of furnisher's reports, apart from investigation, is not properly considered in claim under section 1681s-2(b)). Because all of the actual damages Allicon seeks, including the lost value of his tractor-trailer and the increased interest charged on his credit cards, occurred as a result of the January 2008 denial of credit, and not as a result of Verizon Wireless' failure to reasonably investigate after being notified of Allicon's dispute by the CRA, Verizon Wireless is not liable for those damages under the FCRA.

    B.    Statutory Damages

Under section 1681n, as an alternative to actual damages, the court may award statutory damages of not less than $100.00 or more than $1,000.00 where a furnisher has willfully failed to comply with the requirements of the FCRA. See 15 U.S.C. § 1681n(a)(1)(A). Although the statute itself provides no criteria for courts to apply in assessing what amount of statutory damages might be appropriate, the court has discretion to award statutory damages within the range provided by statute. See Sullivan v. Greenwood Credit Union, 520 F.3d 70, 74 (1st Cir. 2008). In this case, given the lengths to which Allicon

had to go to address what should have been a relatively simple clerical error for Verizon to fix, the court finds that a damage award of $1,000.00 is appropriate in this matter and recommends that Verizon Wireless be ordered to pay $1,000.00 to Allicon in damages.

IV.  Motion for Summary Judgment (doc. no. 20)

Prior to the entry of default in this matter, Allicon filed a motion for summary judgment. Although the summary judgment motion has not been referred to this magistrate judge for a specific recommendation as to disposition, the court notes that if the district judge approves this recommendation and enters default judgment, the matter "disposes as to the liability of defendant," thereby rendering plaintiff's request for summary judgment (doc. no. 20) moot. See Quinones v. MSA Records, Inc., No. 08-1313 (DRD), 2010 WL 473932, *1 (D.P.R. Oct. 29, 2010).

**Conclusion**

For the foregoing reasons, the court recommends that the district judge enter findings consistent with this report, that the motion for default judgment (doc. no. 24) be granted, and that damages be awarded to plaintiff in the amount of $1,000.00. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R.

Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, ___ U.S. ___, No. 11-7382, 2012 WL 33578 (Jan. 9, 2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

                                                                                       _____
                                                                                       Landya McCafferty
                                                                                       United States Magistrate Judge

January 18, 2012

cc: George Allicon, pro se